## McLeod et al. v. Lampkin Hotel Co.

(Decided Nov. 20, 1934.)

STOUT & HERDMAN and M. D. BURTON for appellants.

MILLIKEN & MILLIKEN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In January, 1931, the appellants, W. J. McLeod and Eugenia McLeod, leased a lunchroom or restaurant of the Helm Hotel at Bowling Green, Ky., for the year 1931, with an option for the year 1932. The option for 1932 was exercised, and the appellants operated the lunchroom to the end of that year. At that time the hotel was leased to one Albert Noe, and he refused to rent the lunchroom for the year 1933, except from month to month. By this arrangement with Noe the appellants continued to occupy the room for the year 1933. Mrs. C. H. Reynolds was the manager for appellants and looked after and transacted practically all the business in connection with the operation of the lunchroom.

In October, 1933, appellants sent Mrs. Reynolds to Dr. Helm and C. W. Lampkin, who at that time were owners of the hotel, to secure a lease of the lunchroom for appellants for the year 1934. Mrs. Reynolds negotiated with Lampkin, who was president of the hotel company, for the lease for appellants, but Lampkin refused to lease the lunchroom to appellants. Mr. Lampkin said that they had paid their rents promptly, but assigned other reasons (not necessary to state herein) why he would not lease to appellants, but told Mrs. Reynolds that he would lease the lunchroom to her. According to the evidence of Mrs. Reynolds, she reported to appellants that Mr. Lampkin refused to lease to them but would lease to her, provided the appellants would sell or lease to her their equipment which they had in the lunchroom, and appellants promised that they would sell or lease to her their equipment, and she went back and told Lampkin that appellants would sell to her, whereupon Lampkin leased the lunchroom to Mrs. Reynolds with the understanding that she would buy or lease the equipment of appellants, and the lease was not to be effective until she made those arrangements with appellants. She took the lease and gave it to appellants and told them that the lease was on conditions that she buy them out, but later, when she said anything to appellant about a settlement or buying them

out, they would say, "How will Lampkin know I hadn't bought them out?" When Mrs. Reynolds became convinced that she could not buy out appellants, she took the lease and surrendered it to Lampkin and told him that she was unable to make any arrangements with the appellants. It was also provided in the lease to Mrs. Reynolds that certain repairs be made to the lunchroom by removing a partition wall so as to include another room and perhaps papering, painting, and other repairs. Between the date of the lease to Mrs. Reynolds in October, 1933, and January 1, 1934, the repairs were made by appellants as indicated in the lease to Mrs. Reynolds. Appellants claim that they made the repairs under the impression that the lease to Mrs. Reynolds, who was their agent, was in fact for their benefit and that they had the lunchroom leased for the year 1934. About December 1, 1933, 30 days before the expiration of appellants' lease, the hotel company, by Mr. Lampkin its president, notified appellants and Mrs. Reynolds to vacate the property by January 1, 1934. Appellants refused to vacate the property, claiming that they had the property leased for the year 1934, by reason of the lease to Mrs. Reynolds, and thereupon the hotel company instituted forcible detainer proceedings against appellants, which was determined in the county court in favor of the hotel company, and appellants traversed to the circuit court. At the conclusion of the evidence the court peremptorily instructed the jury to find a verdict for the hotel company, appellees herein, and entered judgment accordingly. Hence this appeal.

It is insisted for appellants that the court erred in not submitting the case to the jury for its determination of the issues under the evidence. There is no conflict in the evidence as to what occurred between Lampkin and Mrs. Reynolds. The only conflict relates to what occurred between Mrs. Reynolds and the appellants. It was testified by Lampkin and Mrs. Reynolds that Lampkin positively refused to lease the property to appellants but would lease it to Mrs. Reynolds with the understanding that she was to buy appellants' equipment and operate the lunchroom herself as the lessee of the hotel. Appellants testified that, when Mrs. Reynolds secured the lease to herself from Lampkin, she called them and told them that she had the lease in her name, and that "she was glad to get it and would continue as we had been." But it is not shown, however,

that Lampkin knew anything about the conversation or understanding between Mrs. Reynolds and appellants. It may be true that appellants thought that they would operate the lunchroom for the year 1934 under Mrs. Reynolds' lease and that they made the repairs in good faith pursuant to that understanding with Mrs. Reynolds. Mr. Lampkin said he knew the repairs were made by some one, but it is not shown that he knew anything about the understanding between appellants and Mrs. Reynolds, and, so far as the evidence discloses, Mr. Lampkin thought that the repairs were being made under his lease to Mrs. Reynolds.

There is no evidence conducing to show that appellants had a lease for 1934, and, if they made repairs under the impression or idea that they had such lease, it was not brought about by Mr. Lampkin, but by Mrs. Reynolds, for whose conduct Lampkin was not responsible, since it is not shown that he was a party to the alleged deceit practiced upon appellants by Mrs. Reynolds.

It is argued that Lampkin is estopped to deny appellants the right to operate the lunchroom for the year 1934, because he knew that appellants were making the repairs and expenditures with the view of keeping the lunchroom for the year 1934, and in support of this argument they cite and rely on the cases of Edwards-Pickering Co. v. Rodes et al., 203 Ky. 95, 261 S. W. 884; and Irvine v. Scott, 85 Ky. 260, 3 S. W. 163, 8 Ky. Law Rep. 911, and other cases of similar holding, which are predicated upon the theory that, if the landlord without objection permits the tenant to make arrangements to retain possession for another year and make expenditures under the belief he is to remain, that belief being induced by the conduct of the landlord, the right of the landlord to adopt the remedy provided by the statutes will be denied him upon grounds of equitable estoppel. But those cases are not in point with the facts of the case at bar, because it is not shown that Lampkin induced appellants to make the repairs and expenditures alleged to have been made by them.

It is also argued for appellants that the lease given to Mrs. Reynolds individually inured to the benefit of appellants and that she held as trustee for them since she had been the manager and agent for appellants in the operation of the lunchroom and these facts were

known to Lampkin, and, citing certain cases which they argue, support their contention. But the facts of the case at bar do not come within the rule of the cases holding that, where the agent secures for himself a contract contrary to the interest of his principal, the contract would inure to the benefit of such principal. The undisputed evidence in the case at bar is that Mrs. Reynolds told Lampkin that she came to secure a lease for her principals, the appellants, and he refused to give such lease, but told her he would lease to her individually, and Mrs. Reynolds reported this to her principals and later did secure the lease in her name. If there was any fraud or deceit practiced upon appellants, it was by Mrs. Reynolds in inducing them, if she did so, to believe that they would operate the lunchroom as they had been, under her lease. But this was after she had secured the lease and had no connection with the securing of same, nor was Lampkin a party to the alleged fraud or deceit which Mrs. Reynolds may have practiced upon her principal. The appellant W. J. McLeod testified that he did not go to Mr. Lampkin to try to get a lease for himself, and said that "Mr. Lampkin and I don't jibe very well, and I didn't want to have anything to do with him. * * * I didn't want to have any business dealings with him," and for that reason he sent Mrs. Reynolds to get the lease for him, and, when Mrs. Reynolds came back and told him that she could not get the lease for him, he told her it did not matter just so they could have a lease, and it did not matter whose name it was in. His own statement is conclusive that he knew he had no lease for 1934. It is obvious that appellants took it for granted that they would continue in the possession and operation of the lunchroom for the year 1934, by arrangements with Mrs. Reynolds under her lease, and, acting on this belief, they made the repairs and expenditures according to the terms of Mrs. Reynolds' lease, and, so far as the hotel company is concerned, it was a voluntary act on the part of appellants, for which they cannot complain as against the hotel company. Wieck v. Glindmeyer, 229 Ky. 28, 16 S. W. (2d) 487.

Upon a careful examination of the evidence, our conclusion is that there was no evidence tending to show that the lease was executed to Mrs. Reynolds for the benefit of appellants, nor was there any conduct on the part of appellee, by its agent, Mr. Lampkin, to in-

duce appellants to make the alleged repairs and expenditures, or other conduct sufficient to constitute equitable estoppel. Having these conclusions, it follows that the trial court did not err in directing a verdict for appellee.

The judgment is affirmed.